CUNNINGHAM REALTY COMPANY, A CORPORATION, APPELLANT, v. DRAINAGE DISTRICT No. 6 OF PEMISCOT COUNTY, MISSOURI, A MUNICIPAL CORPORATION AND T. R. COLE, J. H. HENDERSON AND U. C. WELLS, JUDGES OF THE COUNTY COURT OF PEMISCOT COUNTY, MISSOURI, RESPONDENTS.—40 S. W. (2d) 1086.

In the Springfield Court of Appeals.   July 3, 1931.

2

*Von Mayes* for appellant.

*Charles Claflin Allen, B. H. Charles* and *Ward & Reeves* for respondents.

SMITH, J.—This suit is based upon an amended petition in three counts. The petition is very long, we do not set is out in full. The first count of the petition alleged that the plaintiff owned the following described lands: The southwest quarter of section 31, and northeast quarter of section 32, all in township 18, range 12 east; and the west half of west half of section 19, in township 18, range 13 east, all situate within the boundary lines of said drainage district, and in Pemiscot county, Missouri. The petition alleged the establishment of Drainage District No. 6 of Pemiscot county, Missouri, within which district was included the above described lands, and that the total benefits assessed against the lands thereof was $541,491, and that the original cost of construction of said district was $284,000, and benefits were assessed and the original drains and works of said district were completed prior to 1918. In 1918 the landowners in said district filed their petition under section 5613, Revised Statutes 1909 (section 10845, R. S. 1929), to enlarge, clean out and remove obstructions from the original drains of said district. This petition was granted and the engineer reported the cost of the work to be $784,515.94, which, under orders of the court, was divided *pro rata* against the lands of the district according to the original assessments of benefits, and $600,000 of bonds of the district were issued and sold to raise funds with which to enlarge, clean out and remove obstructions from the original drains of the district.

The plaintiff concedes the proceedings to be regular and legal up to this point. The first count of the petition complains of three additional levies made thereafter, the complaint in said petition being expressed as follows:

"That thereafter, on April 27, 1922, said court levied an additional tax of $170,744 against the lands of said district to complete said work of enlarging, cleaning out and removing obstructions from said drains, and thereupon issued and sold bonds of said district in the total amount of $250,000 to raise funds for said purpose; that thereafter, on December 3, 1923, said court levied an additional tax of $35,232.99 against the lands of said district to complete said work of enlarging, cleaning out and removing obstructions from said drains, and thereupon issued and sold bonds of said district in the total sum of $30,000 to raise funds for said

purpose; and thereafter, on January 20, 1925, said court levied an additional tax of $27,616.04 against the lands of said district to complete said work of enlarging, cleaning out and removing obstructions from said drains, and thereupon issued and sold bonds of said district in the total sum of $25,000 to raise funds for said purpose; that the said levies of said additional taxes by said court against the lands of said district were not made upon any petition of any landowners or report of the engineer of said district, and were made by said court without authority in law and are void and said additional taxes so levied are illegal and the same constitute clouds upon the title of plaintiff to its said lands, and the said issuance of said bonds by said court in excess of $784,515.94, the said cost of said work of enlarging, cleaning out and removing obstructions from said drains reported by the engineer of said district and taxed against the lands of said district as aforesaid, was without right or authority in law and is void and said bonds so issued in excess of said $784,515.94 are invalid, and defendants threaten to and will, if not restrained, levy or extend by apportionment annually a tax against the lands of said district, including the said lands of plaintiff, to pay the interest on said invalid bonds and thereby cast further clouds upon the title of plaintiff to its said lands and will attempt annually to collect by suit illegal taxes from plaintiff and to sell its said lands to pay the same.

"Plaintiff further states that if the said clouds upon its title to its said lands are left to stand and if defendants are suffered to cast further clouds upon the title of the plaintiff to its said lands as aforesaid or attempt to collect by suits from plaintiff said illegal taxes levied against its said lands as aforesaid, or any part thereof, the same will hinder and embarrass and prevent the plaintiff in the sale and disposition of its said lands and diminish the market value thereof and cause a multiplicity of law suits; that it requires legal acumen to determine the invalidity of said illegal taxes and plaintiff has no adequate remedy at law; and plaintiff further says that if any of said taxes are adjudged by the court to be legal against its said lands plaintiff is ready and willing and hereby offers to pay the same or any portion thereof that may be adjudged by the court to be legal and to do equity any otherwise in the premises.

"Wherefore, plaintiff prays the decree of this court adjudging that the levies of said additional taxes against its said lands are null and void and that said taxes so levied are illegal, and that the same be removed as clouds upon the title of plaintiff to its said lands, and that the defendant be enjoined from levying or extending by apportionment any tax against the lands of plaintiff aforesaid to pay the interest on said bonds issued in excess of $784,515.94 by said court for said district as aforesaid and from attempting to

collect from it by suit the said illegal taxes levied against the said lands of plaintiff, and for such other and further relief as the court may deem proper and just in the premises.''

The second count of plaintiff's petition is as follows:

''Plaintiff for another and different cause of action repeats and realleges therefor the facts and statements contained in the first, second and third paragraphs of the first count of this petition, and further states therefor that on the 8th day of May, 1929, the said court for said district levied a tax of $32,489.96 against the lands of said district, including the said lands of plaintiff, designated by said court as a maintenance tax and as being 6 per cent of benefits assessed against said lands in 1918, which amount is in excess of ten per cent of the original cost of construction of said district, in violation of section 4511, Revised Statutes 1919; that there was ample money in the maintenance fund of said district at the time of such levy to maintain the ditches and works of said district for the ensuing year and such tax was not needed to maintain the drains and works of said district, and the action of said court in levying the same was oppressive and arbitrary and an abuse of discretion; that in fact said tax was not levied by said court for maintenance purposes, but was levied under the guise of a maintenance tax to raise funds to expend in enlarging and cleaning out the drains of said district and in doing new work therein and therefore said tax was levied by said court without authority in law and is illegal and that portion of same levied against the said lands of plaintiff is a cloud upon the title of plaintiff to its said lands.

''Plaintiff further states that if the said cloud upon its title to its said lands is left to stand, or defendants are suffered to attempt to collect by suit from plaintiff said illegal tax levied against its said lands as aforesaid, or any part thereof, the same will hinder and embarrass and prevent the plaintiff in the sale and disposition of its said lands and diminish the market value thereof and cause a multiplicity of law suits; that it requires legal acumen to determine the invalidity of said illegal taxes and plaintiff has no adequate remedy at law; and plaintiff further states that if any of said maintenance tax is adjudged by the court to be legal against the said lands plaintiff is ready and willing and hereby offers to pay the same or any portion thereof that may be adjudged by the court to be legal and to do equity any otherwise in the premises.

''Wherefore, plaintiff prays the decree of this court adjudging that the levy of said maintenance tax against its said lands is null and void and that said tax so levied is illegal, and that the same be removed as a cloud upon the title of plaintiff to its said lands and that the defendants be enjoined from attempting to collect from it by suit said tax levied against the said lands of the plaintiff, and

for such other and further relief as the court may deem proper and just in the premises."

The first paragraph of the third count of the petition is as follows:

"Plaintiff for another and different cause of action repeats and realleges therefor the facts and statements contained in the first, second and third paragraphs of the first count of this petition and further states therefor that on the 25th day of May, 1929, said court levied a bridge tax against the land of said district of one per cent of the total benefits assessed against the land in said district; that said court was without authority in law to levy said bridge tax and the same is illegal and that portion of same levied against the said lands of plaintiff is a cloud upon the title of plaintiff to its said lands."

The remaining paragraphs of this count are exactly like the last two paragraphs of the second count above set out.

The defendants demurred to each count of the plaintiff's petition, which demurrer was overruled, and the defendants filed their answer which is as follows:

"1. Now on this day come the defendants and for answer to plaintiff's first amended petition admit that plaintiff, Cunningham Realty Company, is now a corporation, but alleges the facts to be that while it is incorporated, and as such the owner of the land described in plaintiff's petition, yet, as a matter of fact said land, at the times in question in plaintiff's petition, was the property of J. A. Cunningham, F. J. Cunningham, C. H. Cunningham, and C. L. Cunningham, hereinafter called Cunningham Brothers; that they organized said plaintiff company under the name of Cunningham Land & Improvement Company and deeded to it a large amount of land which they owned and which formed the assets of the Cunningham Land & Improvement Company, and said Cunningham Brothers owned the land and real property that formed the assets of said corporation, and in transferring it to said corporation owned all of the corporate stock, so that while it is a corporation it was and is in fact owned by said Cunningham Brothers and the heirs of those who have died since said incorporation; admit that the defendant drainage district No. 6 of Pemiscot county, Missouri, is and was at all the time mentioned in plaintiff's petition a municipal corporation, and that the defendants, T. R. Cole, J. H. Henderson and U. C. Wells, are the members of the county court of Pemiscot county, Missouri; admit that the lands of said drainage district No. 6 lie wholly within said county, and that the original work, drains and improvements of said district were constructed and completed prior to the year 1918; admit that the plaintiff is the owner of the land described in its petition and that same is situate within the boundary lines of said drainage district No. 6; admit that in the year 1918; which defendants allege

6

was on the 6th day of April, 1918, a petition of owners of lands in defendant drainage district No. 6 filed their petition with the county clerk of Pemiscot county, Missouri, alleging that the ditches and drains of said defendant district were not large enough and did not and do not have adequate outlets to properly drain and reclaim the land of said district, and that said drains have partly filled up and become obstructed and the flow of water impeded and their efficiency impaired; that it was necessary to enlarge, clean out and provide adequate outlets and defendant alleges that said petition prayed that the surveyor, or some competent engineer be ordered to view said district and report his findings and recommendation, together with his estimate of cost thereof, and that the court order such work to be done as should be found proper and necessary, and that bonds be issued in a sum sufficient to pay the cost thereof; that said petition was signed by more than a majority of the landowners in said defendant district, and that said J. A. Cunningham, F. J. Cunningham, C. L. Cunningham, and C. H. Cunningham, the then owners of the land described in plaintiff's petition and who were the owners of all the stock of plaintiff corporation, signed said petition to the county court, and later the said Cunningham Brothers above-named conveyed said land in plaintiff's petition described to the plaintiff corporation, which the said parties owned as aforesaid, and in which said corporation the said Cunningham Brothers were not only the owners, but were the directors and operators of said plaintiff company. The defendants further admit that notice, in conformity with the statute, of the filing of said petition was given by the county court clerk, and a hearing had thereon by the county court, and that the court granted the prayer of said petition; and defendants allege that on May 6, 1918, the court appointed a surveyor and consulting engineer to examine the land and the ditches and other improvements and make report of their findings and estimate of the cost to do the improvements prayed for; that thereafter the said appointed surveyor reported his finding to said court, together with his estimate of the costs to make said improvements asked for by said petition, but defendants deny that the engineer reported the cost of making said improvements, or reported that the amount was $784,515.94 as alleged in plaintiff's petition, but aver that said engineer only reported the estimated cost of making said improvements and that the amount was vastly in excess of $784,515.94 as set out in plaintiff's petition; admit that taxes were assessed against the lands in said district and same were divided *pro rata* according to the original assessment of benefits against the lands therein; allege that said work was done by competitive bids and contracts as provided by law, and admit that bonds were issued at the time and in the amounts as set out in plaintiff's petition,

and admit that the assessment of taxes and the issue and sale of the bonds was done and had by the county court of Pemiscot county, Missouri, as representative and for and on behalf of said drainage district, for the purpose of doing said work and making said improvements as prayed for in said petition and as ordered done by the county court clerk in conformity therewith, and for the purpose of completing said work and improvement as alleged in plaintiff's petition; deny that the levy of said taxes or any of same, by said court against the lands of said district was made by the court without authority of law and void, but allege the facts to be that said levy of taxes as complained of by plaintiff in said petition with reference to enlarging, cleaning out, removing obstructions from said drains and giving outlet thereto, were done in conformity with the law and upon petition of the Cunningham Brothers aforesaid and of this plaintiff and in conformity with the law and was valid and binding; and further answering these defendants deny generally and specifically each and every other allegation, averment and statement in plaintiff's petition contained, and having fully answered pray to go hence without day and with their costs.

"2. For another and further defense to plaintiff's petition herein defendants allege and aver that the bonds mentioned in plaintiff's petition were in conformity with the statutes of Missouri in such cases made and provided, duly registered in the office of the Auditor of the State of Missouri, and said bonds were sold, and the unpaid portion of said bonds are now in the hands of bona fide owners thereof; that the payment of said bonds depends upon the collection of the taxes sought to be enjoined by plaintiff in this action and that said bond owners and holders are vitally interested therein. and are necessary parties to this action; that the defendants herein having sold said bonds and received the proceeds and money thereon, and not being guarantors to refund same or guarantee said bonds, are not interested in the defense of this action as are the holders and owners of said bonds as aforesaid; that plaintiff coming into a court of equity and seeking to cancel and set aside the levy of taxes and prevent the collection thereof and thereby cut off the source of revenue from which said bonds will be paid, is thus and thereby seeking to deprive the bondholders and owners of their property without due process of law, contrary to and in violation of Article 5 of the Constitution of the United States, and Section 30, Article 2 of the Constitution of Missouri, and the defendants here and now plead that there is a misjoinder of parties defendants in this section and that the plaintiff cannot maintain this action without having the proper parties defendants in this case, and to attempt to enjoin the collection of the taxes as herein

sought is in violation of the Constitution of the United States and of the State of Missouri as aforesaid, and again having fully answered defendants pray to go hence without day and with their costs.

"3. Defendants for another and further answer and defense to plaintiff's petition herein again reaffirm the relation and connection of the plaintiff and J. A. Cunningham, C. H. Cunningham, F. J. Cunningham, and C. L. Cunningham, and allege and aver that the part of said petition with reference to a levy made by the County Court on the 8th day of May, 1929, against the lands of said district as a maintenance tax, and that part of said petition with reference to levy made by the county court on the 25th day of May, 1929, known as a bridge tax, has no connection with or relevancy to that part of said petition with reference to the bond issue and tax levy growing out of the petition filed in 1918 by land-owners to enlarge, clean out and remove obstructions from the drains of said defendant district and give outlets therefor, and each of the three matters set up in plaintiff's petition are separate and independent from each other and for different purposes, and that since they do not grow out of the same subject-matter and are not connected with each other, it is therefore a misjoinder of attempted statement of three separate and distinct causes of action in one count in one petition; and that they require three separate and distinct judgments and cannot be incorporated in one judgment and therefore this action cannot be maintained in that condition, and defendants here and now plead a misjoinder of three attempted causes of action in one count in one petition and ask that this cause be dismissed therefor at plaintiff's cost.

"4. For further and special answer herein, defendants say that at the time when the petition or statement of the owners of lands was filed with the Clerk of the County Court as alleged in plaintiff's petition, showing the necessity of enlarging, cleaning out and removing obstructions from the original drains in said district and providing outlets therefor, the real estate alleged in plaintiff's petition as to the property of the plaintiff herein was owned by C. H. Cunningham, J. A. Cunningham, C. L. Cunningham, and F. J. Cunningham, and all of the said Cunninghams and plaintiff herein signed the aforesaid petition or statement; that by the statement aforesaid petitioners alleged that the original drains of said districts needed enlarging, cleaning out and obstructions removed therefrom and outlets therefor, and prayed the county court of Pemiscot county to order the surveyor or some other competent person to view the said ditches and report his findings and recommendations, together with his estimate of the cost thereof, and prayed the said court to order such work to be done as the person to be appointed

by said court should find proper and necessary; and by the said petition or statement the petitioners further prayed that bonds of the district be issued in an amount sufficient to pay the cost of the work necessary to construct the aforesaid improvements; that thereafter, to-wit, on the 20th day of June, 1918, said C. H. Cunningham, J. A. Cunningham, C. L. Cunningham, F. J. Cunningham deeded the aforesaid lands to the Cunningham Land & Improvement Company; and that the Cunningham Land & Improvement Company subsequently changed its name to the Cunningham Realty Company and is the plaintiff herein. Defendants further allege that the stock of the plaintiff was owned by the said C. H. Cunningham, C. L. Cunningham, J. A. Cunningham and F. J. Cunningham, and that they were the officers of, owned and operated the said plaintiff corporation.

"Defendant further states that the county court of Pemiscot county, Missouri, upon the petition of said plaintiff and its owners and representatives and others, found that the issuance of the additional bonds complained of in plaintiff's petition was necessary to raise funds to complete the said work of enlarging, cleaning out and removing obstructions from such drains and providing outlets therefor as alleged in plaintiff's petition; defendants allege that by reason of the aforesaid matters and things the plaintiff is estopped to allege that the levies of additional taxes and additional bonds for the purpose of completing said work of enlarging, cleaning out and removing obstructions from such drains. and whose issuance was prayed for in the aforesaid statement, are illegal.

"5. Further especially answering, defendants allege the plaintiff acquired the lands alleged by it to be owned in the district by quit claim from C. H. Cunningham, C. L. Cunningham, J. A. Cunningham and F. J. Cunningham on June 20, 1918; that said above-named Cunninghams are brothers and owned and operated the plaintiff company long before said land herein was deeded to said company, and owned all the stock in said plaintiff company and constituted all the officers, directors and managers thereof, and at all said times the said Cunningham Brothers and the plaintiff herein knew said work was being done upon the petition of said parties and others filed with the county court on the 6th day of April, 1918. and knew that the county court at the request of them and other landowners, issued the bonds in question to raise money with which to pay for said work. and that said money was raised and expended to complete said work in question; that at no time did plaintiff make any objection in the county court or elsewhere to the issuance of the additional bonds alleged in plaintiff's petition. although it well knew, or should have known, of their issuance; that each and all of the aforesaid bonds has and have been. duly registered by the auditor of the State of Missouri, but that plaintiff

has never sought to enjoin their issuance or registration; that plaintiff has each year since the issuance of the bonds aforesaid, paid all of the taxes and assessments imposed upon its lands by the defendant drainage district, including the additional taxes and assessments and interest thereon for the payment of the additional bonds whose issuance plaintiff now alleges is illegal; that by the failure of the plaintiff to make complaint in any manner and by payment of taxes as aforesaid and by its acquiescence has led and induced bond buyers to purchase said additional bonds; wherefore, it would be inequitable to permit plaintiff to allege their invalidity and plaintiff is estopped from so alleging.

"Defendants further state that as appears from plaintiff's petition, the first series of additional bonds was issued and has been outstanding over seven years; the second issue of additional bonds as alleged in plaintiff's petition has been outstanding over six years; the third issue of additional bonds as alleged in plaintiff's petition has been outstanding for five years. Defendants further state that by reason thereof and by further reason of the facts hereinabove alleged in this answer, the plaintiff has waived its rights, if any it has, to have the said additional bonds and taxes declared illegal and that its demand therefor has become stale and it has been guilty of laches in the premises, and not entitled to the relief sought in this case, and defendants pray judgment herein.

"6. Further especially answering, defendants allege that all additional bonds referred to in plaintiff's petition have been duly registered by the state auditor of Missouri as required by law; and that all of said additional bonds were payable to bearer and recite they were issued by defendant Drainage District No. 6 for the purpose of enlarging, cleaning out and removing the obstructions from the ditches in said district under and pursuant to and in full compliance with the constitution and laws of the State of Missouri, and under and in full compliance with orders duly made by the county court of Pemiscot county, Missouri; by each of said bonds the said Drainage District No. 6 covenants that all acts, conditions and things lawfully required to be done precedent to and in the issuance of said bonds, including the organization of the district, and adjudication of benefits assessed and the apportionment and division of the cost of the work *pro rata,* according to the original assessment against the lands therein and in dividing, pro rating and levying the tax have been done, have happened and been performed in apt time and manner as required by law, and that the total amount of bonds issued by said district did not exceed any statutory or constitutional limitation; and that said bond issue complained of, as pleaded in plaintiff's petition, was solely for the purpose of obtaining money to complete the work and improvements in enlarging, cleaning out, removing obstructions

and obtaining outlet for the drains of the defendant district; that same was done at and upon the request of the plaintiff, its owners, operators, officers and other landowners of said district; that said bonds, at their request, were sold and the money obtained in good faith expended for the purpose above set out, and without which the work would not have been completed and the expenditures therefor made would have been practically valueless; that the plaintiff and other owners of land received the benefit from the money obtained by the sale of said bonds and sat silently by and acquiesced therein until said bonds were duly registered by the state auditor and made no objections thereto, but permitted said bonds to be purchased by innocent parties and the money therefor spent for the benefit of plaintiff and other landowners and that it would now be against equity and good conscience to permit the plaintiff to receive the benefits and refuse to pay therefor. Wherefore, defendants state that plaintiff is estopped to allege that said bonds are invalid for the reasons alleged in plaintiff's petition.

"7. Further answering defendants allege and aver that all of the bonds described in plaintiff's petition have been duly registered by the auditor of Missouri, and that none of the allegations in plaintiff's petition contained charged forgery or fraud, and therefore said action cannot be maintained.

"And further answering defendants allege that the orders of the county court of April 27, 1922, December 3, 1923, January 20, 1925, levying additional assessments to complete said work and issuing additional bonds as alleged in plaintiff's petition were and are judgments valid and binding upon plaintiff, and that the matters and things alleged in plaintiff's petition have been adjudicated by the said county court of Pemiscot county. Defendants further aver that the orders of the said county court of the 8th day of May, 1929, and the 25th day of May, 1929, were and are judgments valid and binding upon plaintiff, and that the matters and things alleged in plaintiff's petition have been adjudicated by the said county court of Pemiscot county.

"9. Defendants further aver that, as appears in plaintiff's petition, the lien upon the lands of plaintiff complained of in plaintiff's petition arising by virtue of the orders and judgments of the county court of Pemiscot county of April 27, 1922, December 3, 1923, arose and were created more than five years prior to the institution of this suit and are therefore barred. Wherefore defendants say plaintiff should not recover against said lien.

"10. Further answering, the defendants allege and aver that whatever taxes, if any, that have been levied for maintenance tax or bridge tax upon property in defendant Drainage District No. 6, has been levied according to law and is necessary tax, and against

which plaintiff has no right to complain, and that said levy and taxes are not illegal and do not constitute any cloud upon plaintiff's title to the land in question, but are valid, binding and subsisting obligations, and for which plaintiff, as owner of the property in question, is justly and legally entitled to pay; and having fully answered defendant prays that plaintiff's bill be dismissed and that they go hence without day and with their costs."

The petition in this case was originally in one count and after the testimony was all in the plaintiff was given leave to amend, and the petition as hereinbefore referred to in three counts, was filed, after which the original answer as above set out was refiled. The reply of plaintiff to defendant's answer is as follows:

"Now this day comes the plaintiff and for its reply to the answer of defendants admits that the bonds mentioned in the petition of plaintiff were registered in the office of the auditor of the State of Missouri and the unpaid portion of said bonds are now in the hands of bona-fide owners thereof and that the payment of a portion of said bonds depends upon the collection of the taxes sought to be enjoined by plaintiff in this action, but plaintiff says that said bonds are not liens upon the land described in the petition of plaintiff and therefore the holders or owners of said bonds are not necessary parties to this action; admits at the time when the petition or statement of the owners of lands was filed with the clerk of the county court as alleged in plaintiff's petition, showing the necessity of enlarging, cleaning out and removing obstructions from the original drains in said district, the real estate alleged in plaintiff's petition to be the property of the plaintiff herein was owned by C. H. Cunningham, J. A. Cunningham, C. L. Cunningham and F. J. Cunningham, and the said C. H. Cunningham, J. A. Cunningham, C. L. Cunningham and F. J. Cunningham signed the aforesaid petition or statement; that by the statement aforesaid petitioners alleged that the original drains of the said district needed enlarging. cleaning out and obstructions removed therefrom, and prayed the county court of Pemiscot county to order the surveyor or some other competent person to view the said ditches and report his findings and recommendations, together with the cost thereof, and prayed the said court to order such work to be done as the person to be appointed by said court should find proper and necessary; and by the said petition or statement the petitioners further prayed that bonds of the district be issued in an amount sufficient to pay said cost of the work necessary to construct the aforesaid improvements; that thereafter, to-wit, on the 20th day of June, 1918, the said C. H. Cunningham, J. A. Cunningham, C. L. Cunningham, and F. J. Cunningham deeded the aforesaid lands to the Cunningham Land & Improvement Company; and that the Cunningham Land & Improvement Company subsequently

changed its name to the Cunningham Realty Company and is the plaintiff herein; that the stock of the plaintiff was owned by the said C. H. Cunningham, C. L. Cunningham, J. A. Cunningham and F. J. Cunningham, and that plaintiff has never sought to enjoin the issue or registration of said bonds, but plaintiff denies each and every other allegation and averment of new matter in said answer contained, and having fully replied to the answer of defendants prays judgment as and for the relief prayed in its petition.''

A trial was had on the issues thus made and on May 1, 1930 after having had the cause under advisement for sometime, the court decided the issues against the plaintiff on all the counts of said petition. Motion for new trial was filed and overruled, and appeal taken to this court.

The case is here on three assignments of error as set out in plaintiff's motion for new trial, which are as follows:

''First, because the judgment and decree of the court is against the evidence, against the weight of the evidence and against the law under the evidence.

''Second, Because under the law and the evidence the findings and decree of the court should have been for plaintiff on all counts of the petition.

''Third. Because under the law and evidence the court erred in finding that all the taxes in dispute levied by defendant district are valid and in refusing to grant plaintiff any relief.'' .

There is but little conflict in the evidence in this case. The evidence shows that prior to 1918 Drainage District No. 6 had been organized and that the original benefits assessed against the lands within the district based upon the original work to be done amounted to $541,491, of which $4120.50 was assessed against the lands of the plaintiff described in the petition. The work was all completed prior to 1918. In 1918 the landowners petitioned the county court, under the provisions of section 5613, Revised Statutes 1909 (sec. 10845, R. S. 1929), to enlarge, clean out and remove obstructions from the original drains of the district. This petition was granted and proper orders were made appointing an engineer, and the engineer reported what was necessary to make the improvements, and that the probable cost would be $784,515.94 and this amount through court orders was divided pro rata against the lands of the district according to the original assessment of benefits, and $611.000 of bonds of the district were issued and sold to raise funds with which to do the work.

Up to this point the plaintiff in its brief concedes the procedure was all regular and legal, and no complaint is made as to taxes sought to settle any claim arising under that part of the procedure. The next three levies of taxes as described in the first count of plaintiff's petition are the ones under fire. These are, First, the

levy made April 27, 1922 of an additional tax of $170,744.40 and the issuing bonds to the amount of $250,000 to raised funds to complete the work of enlarging, cleaning out and removing obstructions from the original drains; Second, the levy made December 3, 1923, of an additional tax upon the lands within the district to the amount of $35,232.99 and the issuing of bonds to the amount of $30,000 to secure funds to complete the work of enlarging, cleaning out and removing obstructions from the drains of the district; and third, the levy made on January 20, 1925, of $27,616.04 and the issuing bonds to the amount of $25,000 to raise funds to complete the work of enlarging, cleaning out and removing obstructions from said drains.

It is admitted that only one petition was filed, and that was in 1918 asking for the enlarging, cleaning out and the removal of obstructions within these drains. The question is, was the petition filed in 1918, sufficient under the drainage law to authorize the county court to make the additional levies made in 1922, 1923, and 1925, or, in other words, did the county court have authority under the provisions of the drainage law to make the three additional levies of its own accord without other petitions from the landowners?

When this drainage district was originally organized it was organized by the county court under the provisions of article IV, chapter 41, of the Revised Statutes of Missouri 1909, and the county court was controlled and governed by the provisions of that law, and the amendments thereto. In other words, it was and is a district regulated by the statutory provisions relating to districts organized by county courts. In 1918 there was a provision in the statute for enlarging, cleaning out and removing obstructions from drains in districts organized by county courts. This was in section 5613, Revised Statutes 1909, and a new section 5614 enacted in 1913, as shown at page 279, Laws of 1913.

The record in this case shows that on April 6, 1918, a statement signed by more than twenty per cent of the landowners within the district was filed with the county court. This statement informed the court that the ditches within said district were not large enough and did not have adequate outlets to properly drain and reclaim the lands, and were partly filled up and that the flow of water therein had become obstructed and impeded and their efficiency greatly impaired, and said statement included a petition for the court to take necessary steps to have such drains cleaned out, enlarged, and all obstructions removed. The petition set out in detail and at length the improvements sought, and closed with this prayer:

"The premises considered, we, the undersigned petitioners, pray this honorable county court to order the surveyor or some other

competent person to view the said ditches and report his findings and recommendations, together with his estimate of the cost thereof, and that this court do order such work to be done as the person appointed by this court shall find proper and necessary to be done, and that bonds of the district be forthwith issued in an amount sufficient to pay the cost of the work necessary to construct the improvements and work theretofore prayed for.''

The record shows that proper notice was published as required by the statute then in effect, and on May 6, 1918, the court approved said statement and petition and made an order that L. E. Thrupp, a competent surveyor, be directed and instructed to examine the lands, ditches and other improvements in said district, and to report to the court at the earliest time possible all work necessary to be done therein to fully reclaim the lands therein, and his estimate of the cost thereof.

The report of L. E. Thrupp was dated and filed June 17, 1918, showing the work necessary to be done, and the estimated cost thereof to be $784,515.94. The record shows that on that date, June 17, 1918, an order of court was made approving the report of the engineer, and levying a drainage tax of $784,515.94 against the lands of the district to pay for the work recommended by the engineer and on July 22, 1918, ordered that said sum be divided *pro rata* according to the original assessments of benefits against the land in said district, and the *pro rata* amount was assessed against each tract within the district, showing the particular amount pro rated against the lands of the plaintiff.

Prior to the 1907 Session Acts there was no provision for the enlarging or cleaning out of ditches, and such work could only be done by establishing a new district. [State v. Penman, 282 S. W. 498, 502.] When the work of enlarging, cleaning out and removing of obstructions was started in 1918 the county court was governed exclusively by section 5613, Revised Statutes 1909, and section 5614, as shown at page 279 of the Laws 1913. Section 5613, Revised Statutes 1909 provided that twenty per cent of the landowners could file a statement that the ditches were inadequate and needed enlarging and cleaning out and obstructions removed, and provided the notice to be published giving the date of a hearing thereon. Section 5614, as enacted in 1913 the one under which the court was acting is as follows:

''On the day set for the hearing of the statement described in the preceding section, the county court shall, unless good cause to the contrary be shown, order the county surveyor, or other competent person to be named by the county court, to have such ditches enlarged, cleaned out, obstructions removed therefrom or new work done, as determined by the court, and make report to the county court of the cost thereof at a time to be fixed by the

county court. If the court finds that the owners of a majority in acreage of said district are petitioners, or have joined in prayer of said petition for said ditch or improvement by motion, then the court shall find in favor of making the improvement. Upon the filing of the report by the person appointed by the county court, of the cost of such work, the county court shall divide the cost of any such work *pro rata* according to the original assessments of benefits against the land included in such drainage district, and the county clerk shall place the same upon the tax books against the land, to be collected as other taxes. The county court may direct that the tax be paid in annual payments, or the county court may issue bonds to pay for the work as provided for in this article and the amendments thereto. If the county court decides to have the new work done, they shall appoint three persons with the qualifications of viewers, as provided in this article and the amendments thereto, to serve with the surveyor, or other person appointed by the court, to determine the damages, which shall be treated in all respects as damages mentioned in this article and the amendments thereto. The work as determined on by the county court shall be advertised, sold and let and the contract performed as provided for in this article, and the amendments thereto, for constructing the ditch; and the contractor shall be paid by the issue of warrants against the district as provided in this article upon the certificate of such person as the county court has appointed that the contract has been performed, or the work may be received in part and paid for as provided for in this article and the amendments thereto.''

It was in keeping with the foregoing statute that the taxes were levied and pro rated against the lands in the district, and it is noted that the exact amount of the taxes as estimated by the surveyor or engineer, $784,515.94, were levied and pro rated against the lands. As stated before no complaint is made thus far. But did the court have authority to make other levies and *pro ratas*, and if so, where did it get its authority?

The record does not show any other petition or statement was filed by the landowners, yet we find that on April 27, 1922, the court made the following order:

''Whereas, on the 6th day of April, 1918, there was filed in the office of the clerk of the county court of Pemiscot county, Missouri, a statement wherein it was alleged that certain ditches in the aforesaid drainage district needed to be enlarged, cleaned out and obstructions removed therefrom, and adequate outlets for drainage be provided, and

''Whereas, said statement was filed in the office of said clerk more than four weeks before the first day of May, 1918, term of the county court of said county, and

"Whereas, the clerk of said court did set said statement for hearing on the first day of the May, 1918, term of the said court, and

"Whereas, said clerk did cause notice of the filing of the said statement to be given as provided by Section 5613 of the Revised Statutes of Missouri for 1909, and

"Whereas, said notice, which was in the form prescribed by said last named section, was published in four issues of the Hayti Herald, a weekly newspaper published in Pemiscot county, the first insertion of the said publication being prior to and before the first day of May, 1918, term of the county court of said county, and

"Whereas, said statement was signed by more than twenty per centum of the number owning lands in said district originally assessed for the cost of construction of the ditches and other improvements therein, and

"Whereas, said petition was also signed by the owners of more than a majority of the acres of land in said district originally assessed for the construction of the ditches and other improvements therein, and

"Whereas, said court did, on the first day of May, 1918, term of said court, appoint L. E. Thrupp, a competent person as engineer for said district, and did direct and empower said Thrupp to examine into the condition of the drainage ditches in said district and its need for outlets for drainage therein, and make report of his examination and investigations to said court, and

"Whereas, said Engineer Thrupp in obedience to the order directing him to investigate and examine into the conditions of the drainage system in said district did make and file his reports in the office of the clerk of this court, and

"Whereas, said court did consider and examine the said reports and approve the same, and

"Whereas, said court did, on the 17th day of June, 1918, order and direct that the ditches in said districts be enlarged, cleaned out, obstructions removed therefrom and adequate and efficient outlets for said district be secured, and

"Whereas, this court did find on the 17th day of June, 1918, that to do the work ordered to be done would cost the sum of $784,515.94, and

"Whereas, on said day it was ordered that said sum be levied and assessed against and upon the lands in said district, and divided and pro rated against each tract of land therein according to the original assessment of benefits, and

"Whereas, said court did direct that the sum so levied and assessed against and upon the said land in said district be payable in nineteen (19) annual installments and did fix the rate of interest upon the unpaid installments of the same, and

"Whereas, said petitioners in their said statement did ask that bonds of the district be issued and sold in an amount sufficient to pay the cost of doing the work aforesaid, and

"Whereas, in order to provide funds to carry on the aforesaid work, this court, for and on behalf of said Drainage District No. 6, authorized and directed the issuance of $600,000 of bonds this court did appropriate all of said $784,515.94 of taxes, except the sum of $123,637.65 and the interest thereon, and

"Whereas, contracts have been entered into by this court to carry out the proposed improvements, and

"Whereas, this court now finds that in order to provide sufficient funds to complete the said improvement it will be necessary to levy and assess the additional sum of $170,744.49 upon the lands in said district, and to issue additional bonds in the amount of $250,000, for and on behalf of said Drainage District No. 6 as well as to provide for the payment of the principal and interest of said bonds.

"Now, therefore, be it ordered, adjudged and decreed by the county court of Pemiscot county, Missouri, as follows:

"1. That the additional sum of $170,744.49 be and the same is hereby levied and assessed for the construction of the ditches and other improvement therein, and that said sum be and the same is hereby pro rated to and assessed against each tract of land or other property in said district according to and in proportion to the original assessment of benefits against the same. The said charge, assessment, and cost shall be and the same is hereby ordered paid in three annual installments in the sum and maturity as follows:

| Year | Amt. of Install. | % of orig. benefits. |
|------|------------------|----------------------|
| 1938 | $56,914.83 | 10.5% |
| 1939 | 56,914.83 | 10.5% |
| 1940 | 56,914.83 | 10.5% |

Such installments shall be collected at the same time that ordinary State and county taxes are due and payable in the years above mentioned.

"It is further ordered that the said charge, assessment, and cost shall bear interest from the 1st day of May, 1922, until delinquent, at the rate of six (6) per centum per annum, and thereafter bear interest at the rate of one (1) per centum per month until paid. The said interest shall be due and shall be collected on the principal amount in each of the years, 1922 to 1937, both inclusive, at the same time that ordinary State and county taxes are due and payable. Interest shall also be collected in the year 1938 and each year thereafter up to and including the year of 1940 upon the amount of said assessment then outstanding.

"It is further ordered that the clerk of this court shall enter in a special book to be known at the 'Ditch Assessment Book' which shall be provided by him at the expense of the district the

total amount of the cost, charge and assessment hereinbefore divided and pro rated against each tract of land and other property as aforesaid, and he shall also enter in an appropriate column in said book the amount of each annual installment thereof together with the interest thereon, and the said clerk is hereby ordered and directed to annually thereafter, until such cost, charge and assessment and the interest thereon shall be fully paid, prepare the annual 'Ditch Tax Book' as is required by law, wherein shall be extended, against the divers lots, parcels of land or other property against which a charge and assessment has heretofore been pro rated, such a percentage of the total charge and assessment against the said property as will produce the installments hereinbefore set out, and he shall also extend thereon the amount of interest due for and in each of said years as fixed by the court herein.

''2. That in order to provide the necessary funds to complete the contracts, already made for enlarging the drainage ditches in said district, cleaning out and removing the obstructions therefrom and securing adequate and sufficient outlets for the same, as well as paying the expenses incident thereto, there shall be and there are hereby authorized to be issued, the negotiable bonds of the said Drainage District No. 6, of and in the county of Pemiscot in the State of Missouri, in the aggregate sum of $250,000 which said bonds shall be numbered from 1169 to 1418, both inclusive, shall be of the denomination of $1,000 each and shall mature as follows:

| Numbers | Amount | Maturity. |
|---|---|---|
| 1169-1178 Inc. | $10,000 | May 1, 1929 |
| 1179-1188 Inc. | 10,000 | May 1, 1930 |
| 1189-1198 Inc. | 10,000 | May 1, 1931 |
| 1199-1208 Inc. | 10,000 | May 1, 1932 |
| 1209-1218 Inc. | 10,000 | May 1, 1933 |
| 1219-1228 Inc. | 10,000 | May 1, 1934 |
| 1229-1238 Inc. | 10,000 | May 1, 1935 |
| 1239-1248 Inc. | 10,000 | May, 1, 1936 |
| 1249-1258 Inc. | 10,000 | May 1, 1937 |
| 1259-1268 Inc. | 10,000 | May 1, 1938 |
| 1269-1318 Inc. | 50,000 | May 1, 1939 |
| 1319-1368 Inc. | 50.000 | May 1, 1940 |
| 1369-1418 Inc. | 50,000 | May 1, 1941 |

''Said bonds shall be dated as of the first day of May, 1922, shall bear interest at the rate of six (6) per centum per annum, payable on the first day of May and November of each year, which said interest shall be evidenced by interest coupons to be attached to each of said bonds. Both principal and interest of said bonds shall be payable, in lawful money of the United States of America, at the office of the county treasurer of Pemiscot county, Missouri, attested by the signature of the clerk thereof, with the corporate

20

seal of said county, and the interest coupons thereto attached shall be executed by the facsimile signature of the county clerk of said county."

The record shows that on the 20th day of January, 1925, the court made an additional levy and assessment, similar to the one set out immediately above, levying $27,616.04 tax against the lands and ordering the sale of $25,000 Drainage Bonds.

It is shown by the two orders above mentioned that the court pro rated and levied against the lands of the district taxes to the amount of $198,360.53 in excess of the estimate filed by the engineer and that much in excess of the amount levied under the petition of the landowners where it was first presented for consideration.

The records show the proceedings as to a levy of $35,232.99 made by the court on December 3, 1923, made for the same purpose as the two orders above mentioned.

We have studied the provisions of the statute under which the landowners proceeded when they filed their statement and petition. Section 5614, Laws 1913, specifically says that "Upon the filing of the report, by the person appointed by the county court, of the cost of such work, the county court shall divide the cost of any such work *pro rata* according to the original assessments of benefits against the lands included in such drainage district, and the county clerk shall place the same upon the tax books against the land to be collected as other taxes." This statute is mandatory upon the court if it be found that the owners of a majority in acreage have joined in the prayer of the petition for said improvement, and in this instance it was found that the owners of a majority in acreage had joined in the petition. The county court was confronted with a petition in which a majority of the landowners had joined asking that certain work be done. The statute provided that a surveyor or other competent person be appointed to do the work, or to estimate the cost thereof. This same petition signed by a majority of acreage of landowners requested that the court order the surveyor or other competent person to view the ditches and report his findings and recommendations with his estimate of the costs thereof, and that bonds of the district be forthwith issued in an amount sufficient to pay the cost of the work necessary to construct the improvements. The court was also confronted with a statute, section 5614, Laws 1913 at page 279, which says that the court shall find in favor of making the improvement. That same section says "The county court may issue bonds to pay for the work as provided for in this article and the amendments thereto."

It seems to us that the plaintiff is forced to this position, that is, of saying to the county court, you had to order this work done as

petitioned for by a majority of the landowners, because the statute says you must have the work done, and then to the position of saying, that although you have done the work that the landowners petitioned for, yet because the engineer or surveyor appointed as the statute provided made a mistake and underestimated the cost of the work, we should not be held to have to pay for the work prayed for in excess of the engineer's estimate. There was no provision in the statute at that time fixing the limit at or near the figures submitted by the engineer, although in 1929 there was an act passed apparently limiting such levies. [Laws 1929, page 187, section 10846, Revised Statutes 1929.]

The article of the statute under which this improvement was sought was rather vague and not specific in many of the details as to how the work should be done. The very section under which the petitioners acted provided that bonds could be sold, yet the court had to look to other sections in the same article for the method of issuing and selling the bonds. In fact the entire article and the amendments thereto, was drawn and worded so that it was susceptible of different constructions, and the legislature realizing this passed an act, Laws 1913, page 281, which in part is as follows: "All contracts entered into, all liens established and other obligations created including warrants and bonds issued, by drainage districts heretofore organized under the provisions of said article 4 of chapter 41, are hereby declared to be valid and the county courts shall levy sufficient tax to pay all such forms of indebtedness. The amendments contained in this act shall be deemed to be remedial in their character, shall be liberally construed to apply to all districts heretofore organized as well as to the districts now in course of organization, or such as shall hereafter be organized under the provisions of article 4, chapter 41 of the Revised Statutes of 1909, as hereby amended."

So far as we have been able to find this is the first time this particular question has ever been before our courts, yet keeping in mind the legislative injunction that the law shall be liberally construed, and the fact that a majority of the landowners petitioned and requested that this work be done, and that it was mandatory that the court order the work done, and that the last three orders and *pro ratas* of taxes described in the first count of plaintiff's petition were necessary to complete the work, we think it would be a too narrow construction to hold that the plaintiff is released from liability for these taxes because of an error on the part of the surveyor or engineer in fixing the amount of his estimate of the costs. It is possible that hereafter, since the amended act passed in 1929, the court might be limited in its orders, but the proceedings under consideration here are not affected by that

amendment, and it is not necessary for us to construe that section as so amended.

We are of the opinion that the court was justified in finding against the plaintiff on the first count of its petition.

On May 8, 1929, the court made an order levying a maintenance tax on $32,489.56 against the lands and property of this district.

The plaintiff in the second count of its petition complains of this order and says the tax is illegal. In 1913 the legislature passed an act, Laws 1913, page 279, section 5611b, authorizing the county court to levy an assessment of tax upon each tract or parcel of land or corporate property within the district to be known as a "Maintenance Tax" and provided that it be apportioned upon the basis of benefits assessed for original construction, *and be limited in any one year to ten per cent of the original cost of construction.* The original benefits in this district were $541,491,000, but the record shows the amount of the original cost of construction of the drains in the original district was $298,410.47. There is a material difference in the benefits assessed and the cost of construction.

The limit on "Maintenance Tax," beyond which the court would not legally have gone, was $29,841.04, which was ten per cent of the original cost of construction. The maintenance tax levied by the county court on May 8, 1929 was $2,648.52 in excess of this limit, and to that extent the maintenance tax, levied as of that date, is excessive and void, and the levy of the "Maintenance Tax" against the plaintiff's land complained of in the second count of plaintiff's petition should be reduced in proportion as $2,648.52 is to $32,489.56.

In the third count of the petition the plaintiff contends that the levy of one per cent of the total benefits assessed against the lands, levied as a bridge tax is void. In the printed argument of the plaintiff it uses this language, "and the courts of this state have held for the purposes of constructing and repairing bridges revenue may be raised by the district, but neither the Legislature nor the court has pointed out the way this revenue can be raised by the district, except, perhaps, by levying taxes for construction or maintenance work."

We think by giving the law a reasonable and liberal construction as mentioned heretofore, that this levy of one per cent designated as a bridge tax was nothing more than a part of the maintenance tax which the court had a right, as we think, to order provided it did not make the maintenance tax exceed in any one year ten per cent of the original cost of construction. The testimony of the engineer and members of the court was that there were a great number of bridges that needed to be maintained. It was the duty of the district to maintain them. [State v. Medicine Creek D. D., 224 S. W. 343.] But since this levy was made on May 25, 1929, just

seventeen days after the other maintenance tax was levied, and since under a liberal construction, even as contended for by the defendant that this be classed as a part of the "Maintenance Tax," it is clearly in excess of the amount of the "Maintenance Tax" that could have been legally assessed.

It follows that the judgment on the first count of the petition should be affirmed; that the judgment on the second count should be modified as hereinbefore stated, and that the judgment on the third count of the petition be reversed, and remanded with directions that judgment be entered for plaintiff on the third count of the petition. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.